# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RANDY LEE ALEXANDER o/b/o WANDA LEE ALEXANDER, Deceased,**

       **Plaintiff,**

**-vs-**                                            **Case No. 6:14-cv-929-Orl-22DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **affirmed.**

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiff[1] filed for a period of disability and disability insurance benefits on April 3, 2008, alleging an onset of disability on January 9, 2007, subsequently amended to October 24, 2007, due

---

[1] The original claimant Wanda Lee Alexander passed away shortly before the ALJ issued her unfavorable decision (Doc. 20 at 2), and the appeal of the unfavorable decision is brought by Randy Lee Alexander on behalf of his deceased wife. For ease of reference, the Court will refer to the claims as those of "Plaintiff."

to emphysema, neck and back pain, depression, anxiety, and poor concentration. R. 31, 213-19, 226, 238, 267, 278. Plaintiff was last insured for DIB on December 31, 2011. R. 366-67. Her application was denied initially and upon reconsideration. R. 101-04, 126-34. Plaintiff requested a hearing, which was held on April 13, 2010, before Administrative Law Judge Pamela Houston (hereinafter referred to as "ALJ"). R. 28-63, 135. In a decision dated May 7, 2010, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 105-20. Following remand from the Appeals Council on November 23, 2011, the ALJ held a second hearing on January 31, 2012. R. 64-100, 121-25. In the decision after remand dated March 9, 2012, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 7-27. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on April 17, 2014. R. 1-5. Plaintiff filed this action for judicial review on June 16, 2014. Doc. 1.

### B. Medical History and Findings Summary

Plaintiff was born April 16, 1961, making her 46 years old at her alleged disability onset and 50 years old when her insured status expired and at the time the ALJ decision issued. R. 213. Plaintiff has a sixth or seventh grade education, and past work experience as a sod layer. R. 33, 67, 266-72.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of thoracic spine, depression, and emphysema. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff had degenerative disc disease of the thoracic spine, depression, emphysema, and alcohol and tobacco abuse, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 13. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work except she could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds; could sit,

stand, and walk for 6-hours in an 8-hour workday with normal breaks but would require alternating between sitting and standing at workstation for 30 minutes each; could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but should never climb ladders, ropes, and scaffolds; must avoid working with dangerous moving machinery and working at heights, and avoid concentrated exposure to temperature extremes, vibrations, fumes, odors, gases, dust aud poor ventilation; could perform simple and routine tasks. R. 15.

The ALJ determined that Plaintiff had no past relevant work. R. 20. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as an office helper. R. 21. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 22.

Plaintiff now asserts two points of error. First, she argues that the ALJ erred by failing to fully develop the record because she did not order updated consultative physical and mental evaluations or obtain evidence from a medical expert. Second, she claims the ALJ erred by failing to apply the correct legal standards to the opinion of the consultative examiner, Dr. Agans. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

**III.    ISSUES AND ANALYSIS**

   **A.    *Development of the Record***

Plaintiff argues that the ALJ erred by failing to fully develop the Record because she did not order updated consultative physical and mental evaluations or obtain evidence from a medical expert. As the Commissioner points out, the posture was somewhat unusual in that, after the ALJ's original decision, the Appeals Council remanded the case because the prior ALJ decision had found Plaintiff's back pain to be a severe impairment, and the Appeals Council remanded, stating pain was a symptom, not a medically determinable impairment, and that a proper evaluation of the evidence would involve identifying any impairment that actually produced back pain and assessing the specific limitations the impairment caused. R. 122-23. The Appeals Council also found that the prior ALJ decision included errors in the evaluation of the effect of Plaintiff's moderate mental limitations on the occupational base. R. 122-23.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. Id. Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings

-5-

and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff had been in a car accident thirty years before and believed her back pain had begun with the injuries from that accident. R. 382. Plaintiff worked as a sod layer/landscaper worker for twenty years. R. 268. Plaintiff first saw Dr. Kornberg, an orthopedic surgeon with Orthopaedic Associates of Osceola, in November 2005. R. 334-35. He noted that she used to lay sod for a living and was bending with physically stressful activity, but since cessation of that activity, symptoms had considerably eased. X-rays of the thoracic spine showed early degenerative disease in keeping with Plaintiff's age. R. 334-35. His assessment was chronic strain symptoms compounded by early degenerative disease. R. 335.

Plaintiff next saw Dr. Kornberg nine months later in August 2006 with similar complaints and he diagnosed her with mechanical symptoms secondary to degenerative disease; he prescribed Skelaixn for spasm during acute symptoms. R. 331. Plaintiff did not return to Dr. Kornberg again for nearly a year, in July 2007; she reported taking occasional over the counter medications for inflammation. R. 332. Dr. Kornberg ordered an MRI, and at the next appointment in August 2007, he noted the MRI showed no significant pathology, particularly no herniation, no protrusion, no evidence of nerve root compression, based on a mild anterior disc bulging at T9-10. R. 339. Dr. Kornberg assured Plaintiff that "she does not have significant or limiting condition." R. 331. A CT scan ordered in October 2007 showed nodules noncalcific and changes in the lungs in keeping with emphysema; Dr. Kornberg referred Plaintiff to a pulmonologist. R. 329. The November 2007 pulmonary function study revealed moderate obstructive ventilatory impairment and otherwise mild results. R. 354. Plaintiff smoked 1.5 packs per day for 30 years and continued to smoke. R. 342.

Pulmonary Disease Specialists diagnosed obstructive bronchitis, acute upper respiratory infections, moderate shortness of breath on exertion, tobacco abuse, joint pain, and alcohol abuse, continuous drinking behavior for the past eight years. R. 342, 346, 349, 353. Plaintiff's condition was similar in March 2008, and Dr. Ameh noted a "persistent pattern for years." R. 342. At her final appointment with Dr. Kornberg in December 2007, he diagnosed Plaintiff with mechanical symptoms in the thoracic spine. R. 328. He noted she had been receiving pain management, specifically joint injection therapy. R. 328.

Plaintiff had two consultative examinations in October 2008. Dr. Christopher Jean performed a consultative evaluation on October 20, 2008 and diagnosed major depressive disorder and anxiety disorder; he noted Plaintiff's report of two blackouts per week and denial of alcohol abuse. R. 378-80. Dr. Glenn Agans performed a physical consultative examination on October 23, 2008 and diagnosed chronic neck pain, chronic mid and lower back pain, chronic obstructive pulmonary disease with exertional dyspnea, depression, and anxiety. R. 382-90.

Plaintiff argues that the ALJ failed to obtain the required consultative examinations or medical expert testimony. Plaintiff cites to the November 30, 2011 Appeals Council order ("AC Order") remanding Plaintiff's case back to the ALJ to:

> Obtain additional evidence from the claimant's treating medical sources, including all clinical, laboratory, diagnostic and treatment information as well as medical source statements as to what the claimant can do despite her impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513). *The additional evidence may include, if warranted and available, consultative orthopedic and/or mental status examination(s) and medical source statement(s). Further, if necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments* (20 CFR 404.1527(f) and Social Security Ruling 96-6p).

R. 123 (emphasis added). The Commissioner argues that the AC Order effectively directed the ALJ to ensure the medical record was up-to-date on remand and to obtain additional evidence in the form of consultative exams and medical expert testimony–but only if necessary or otherwise warranted.

Plaintiff argues that the ALJ should have ordered the additional consultative examinations or medical expert opinion, but instead only obtained two exhibits, one RFC opinion from a "single decision maker" (Robin Burgess) who apparently is not a medical doctor and did not sign the form as a medical doctor. R. 425-32. Such an opinion would not be entitled to any particular weight in this appeal[2], and the Commissioner does not argue to the contrary.

The second exhibit (Ex. 13F) the ALJ obtained was a set of updated medical records from the Osceola County Health Department from March 2010 to September 2011 (R. 446-65) and note back pain, alcohol abuse, and a hospital stay of four days for tachycardia from alcohol withdrawal. R. 461, 465. The ALJ's second hearing was held on January 31, 2012, and the ALJ issued her decision on March 9, 2012, thus, the records from the Health Department were only a few months old at the time she was finalizing her decision. As much as Plaintiff wishes to downplay the Health Department records as "contain[ing] mostly laboratory orders and results," and "shed[ding] absolutely no light on what [she] can do despite her impairments," these records do report some back pain complaints and the doctor's recommendation to discontinue drinking and smoking in 2010. R. 433, 446, 456-57. A more recent record from April 2011 for medication refills noted that she had not been there since July 2010 and that her "pain" was at level 0, although in September 2011, when she went back for medication refills she reported her pain was at a level 8. R. 454.

---

[2]Plaintiff cites the Social Security Program Operations Manual System ("POMS") DI 24510.050 which provides that single-decision maker completed forms "are not opinion evidence at the appeal levels." *See* http://secure.ssa.gov/poms.nsf/lnx/0424510050.

The ALJ considered these records and cited them in finding that, although Plaintiff had moderate difficulties in concentration, she also testified, and there were reports in the record, that she consumed alcohol on a regular basis though her doctors had advised her to stop (Exhibits 10F, 11F, 13F [Osceola Health Department]); alcohol can affect an individual's concentration, persistence, or pace. R. 14. The ALJ also cited the Osceola Health Department records in finding Plaintiff's RFC was well supported in spite of Plaintiff's subjective complaints:

> The RFC assessment herein limits claimant's exertion to light with reduced postural movements, and avoiding pulmonary irritants in light of emphysema. However, claimant continues to expose herself to cigarette smoke and smokes "a pack and a half daily." (Testimony) Claimant bathes and dresses independently and does laundry sometimes. Exhibit 13F founds claimant's physical exam to be "generally wnl [within normal limits] for age and symptoms." And, claimant testified that she takes pain pills only "sometimes" because they make her feel "weird," yet she continues to consume alcohol such that she suffered "alcohol withdrawal tachycardia." (Exhibit 13F) She was told to stop drinking (Exhibit 1 lF). The RFC assessment gives full benefit of the doubt to the claimant, while still relying upon the objective findings in the medical records, which do not appear to support claimant's self imposed limitations. As such, the RFC assessment herein is very liberal in spite of the weak evidence.

R. 21-22 (citing Exhibit 13F from Osceola Health Department).

The Commissioner argues that the ALJ could have ordered a consultative examination, but such options are not required unless there is an evidentiary gap, conflict, or ambiguity in the record that results in clear prejudice to the claimant. Doc. 21 at 7 (citing regulations and cases). The Commissioner contends that the ALJ was not required to order a consultative examination or elicit medical expert testimony because the ALJ had abundant evidence in the record on which to base an RFC assessment under the regulations, and Plaintiff's attorney conceded this point at the second ALJ hearing. The Commissioner point out that when ALJ asked whether any other evidence should be in the file, and Plaintiff's (administrative) attorney said, "It's all up-to-date. All favorable and unfavorable is in the file, Judge," (R. 66) and at the hearing, Plaintiff did not allege she needed a CE or ME to evaluate a worsening pain or mental symptoms left untreated due to lack of access to

medical care; rather, her attorney argued in closing that the medical evidence in the file established her disability. R. 97-99. The Commissioner argues that the ALJ properly assessed Plaintiff's RFC and decided Plaintiff was disabled after considering all relevant evidence, including the objective medical evidence, opinions from acceptable medical sources, and Plaintiff's own testimony.

The ALJ considered the updated records of Plaintiff's care which, if anything, noted at times Plaintiff's pain level was "zero" or findings within normal limits, and contained few if any significant findings or complaints concerning her physical and mental health. The AC Order on remand *conditionally* required the ALJ to obtain "additional evidence" which *"may include*, if warranted and available, consultative orthopedic and/or mental status examination(s) and medical source statement(s)" and medical expert testimony "if necessary." R. 123. Although Plaintiff argues that "updated opinions regarding her current level of functioning were necessary for the ALJ to render an informed decision," with the recent medical records of Osceola Health Department, ALJ was not required to order new consultative examinations or medical expert testimony.

### B. *The consultative examiner's opinion*

Plaintiff claims that the ALJ erred by failing to apply the correct legal standards to the opinion of the consultative examiner, Dr. Agans, pursuant to *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011) which requires the ALJ to "state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. Plaintiff argues that, although the ALJ gave significant weight to the assessment of Dr. Agans finding it was consistent with Plaintiff's orthopedic and chiropractic treatment records (R. 20), the ALJ erroneously failed to include Dr. Agans' restrictions on repetitious work.

The Commissioner argues that the ALJ noted Dr. Agans' exam findings, which generally supported the ALJ's decision, but was not required to mention Dr. Agans' notations of Plaintiff's

-10-

subjective complaints, because they were not objective medical evidence and should not be given significant weight. The Commissioner further argues that, although the ALJ did not specifically mention portions of Dr. Agans' opinion, the ALJ's RFC and hypothetical question to the VE were generally consistent with his opinion (Tr. 15-20, 90-92).

Dr. Agans performed a physical consultative examination on October 23, 2008, diagnosing chronic neck pain, chronic mid and lower back pain, COPD with exertional dyspnea, depression, and anxiety. R. 382-90. Dr. Agans opined in pertinent part that Plaintiff was unable to do any prolonged standing or walking, heavy lifting, or repetitive bending, pulling, pushing, stooping, crawling or climbing. R. 384. These restrictions were generally included in the RFC assessed[3] by the ALJ and are not disputed. R. 15.

However, Plaintiff contends that the ALJ erred by not discussing or including other portions of Dr. Agans' assessment, including the limitation that she was "unable to do any prolonged standing or walking . . . [but] there is no restriction on her ability to sit for prolonged periods of time provided she is allowed frequent positional changes." R. 384. The Commissioner argues that Dr. Agans did not specify what he meant by "frequent positional changes," yet the ALJ included in the RFC finding and hypothetical to the VE a limitation to work with customary breaks to alternate sitting and standing, which is a reasonable interpretation of Dr. Agans' opinion.

The ALJ did thoroughly discuss Dr. Agans' consultative examination of Plaintiff:

Glenn Agans, M.D., performed a consultative evaluation [] for the Office of Disability Determinations on October 23, 2008. The claimant reported a history of chronic neck, mid back and lower back pain of approximately two years duration. The claimant also reported a history of chronic obstructive pulmonary disorder (COPD) for approximately one year yet, she reported she smoked 1 ½ packs of cigarettes per day for approximately 35 years. Finally, the claimant complained of depression and

---

[3] Plaintiff could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but should never climb ladders, ropes, and scaffolds; must avoid working with dangerous moving machinery and working at heights, and avoid concentrated exposure to temperature extremes, vibrations, fumes, odors, gases, dust aud poor ventilation. R. 15.

-11-

> anxiety stating she occasionally felt down in the dumps and did not feel like getting out of bed. Dr. Agans noted the claimant's inability to provide specific details about her depression and anxiety. On examination, the claimant's lungs were clear to auscultation without rales, rhonchi, or wheezes and no increased AP diameter of the chest. Dr. Agans assessed the claimant's pulmonary functions during examination were consistent with an obstructive disorder but further noted improvement post bronchodilator treatment.
>
> On examination of the spine the claimant had diffuse tenderness of the thoracic and lumbosacral spine to the bilateral paravertebral region and mild diffuse spasm in the paravertebral and trapezoid region. The claimant had normal fine manipulation but exhibited a tremor, which Dr. Agans assessed was possibly due to her Albuterol treatment. The claimant had bilateral grip strength of 4/5 with no muscular atrophy or motor deficits. The claimant demonstrated a slightly wide based and slow gait and was assessed with chronic neck and mid to lower back pain, COPD with exertional dyspnea, depression, and anxiety. Dr. Agans restricted the claimant from heavy labor, repetitive bending pulling, pushing, stooping, crawling, or climbing, and prolonged periods of standing or walking. Dr. Agans assessed the claimant's mental faculties were grossly intact and opined she could perform occasional work-related tasks involving understanding, memory, concentration, persistence, social interaction, and adaptation. Finally, the claimant was assessed to have some difficulty with repetitive manipulation of small objects due to chronic neck pain (Exhibit 6F).
>
> \* \* \*
>
> As for the opinion evidence . . . [r]egarding the claimant's physical impairments, the undersigned affords significant weight to the assessment of Dr. Agans because it is consistent with the claimant's orthopedic and chiropractic treatment records, which document only a mild to moderate impairment of the thoracic spine.
>
> In summary, after carefully considering the entire record the undersigned is persuaded that the claimant's impairments are not as limiting as alleged and would not prevent the claimant from performing work at the residual functional capacity noted above on a regular and continuing basis. In light of claimant's degenerative disc disease, physical exertion has been limited to light, and postural movements are reduced. Tasks are limited to those which are simple and routinely performed to assist with any lapse in concentration due to pain, depression, or alcohol abuse. And, environmental pulmonary triggers are to be avoided in light of claimant's emphysema and tobacco abuse. Claimant has been limited in accordance with the objective medical findings hereinabove, and said limitations are appropriately addressed in the RFC assessment herein.

R. 17, 20.

The ALJ acknowledged Dr. Agans' opinion that Plaintiff could not engage in prolonged periods of standing or walking and did include the assessment in the RFC as a restriction that Plaintiff "could sit, stand, and walk for 6-hours in an 8-hour workday with normal breaks but *would require alternating between sitting and standing at workstation for 30 minutes each*." R. 15 (emphasis added). Clearly, the ALJ adopted that portion of Dr. Agans' opinion, converting it to a work-based restriction to include in the RFC and the hypothetical to the VE. *See* R. 91. The ALJ adequately discussed Dr. Agans' opinion and included the limitation at issue in the RFC; thus, she complied with the requirements of *Winschel*.

Plaintiff also contends that Dr. Agans' opinion that Plaintiff "may have difficulty doing repetitive manipulation of small objects due to her chronic neck pain" (R. 384) conflicts with the ALJ's RFC. She argues that the omission is important because, at Plaintiff's first administrative hearing, the vocational expert testified that the additional limitations of "no repetitive grasping and no more than occasional fine manipulation" would eliminate the jobs he testified the hypothetical person could perform and this could have changed the VE's testimony at the most recent hearing. R. 60.

The Commissioner argues Dr. Agans' comment that Plaintiff "may" have problems with repetitive manipulation is too vague as to allow for vocational analysis, as Dr. Agans did not state whether Plaintiff would actually experience limitations and, if so, how often those limitations would occur. The Commissioner contends that Dr. Agans' opinion does not translate, as Plaintiff suggests, to an opinion that Plaintiff could do "*no* repetitive grasping and *no* more than occasional fine manipulation" as she argues.

In her opinion, the ALJ acknowledged Dr. Agans assessed Plaintiff as having "some difficulty with repetitive manipulation of small objects due to chronic neck pain." R. 17. At the first hearing,

the VE testified that adding a limitation of no repetitive grasping and no more than occasional fine manipulation would eliminate the charge account clerk, surveillance system monitor and parimutuel ticket checker. R. 60. However, at the second hearing, the VE testified that the hypothetical proposed by the ALJ would allow her to perform the position of office helper, someone who will deliver messages, do some light filing, running around memos or mail. R. 93.

Dr. Agans' opinion was not definitive that Plaintiff would certainly have difficulty with repetitive movements; rather, it was that Plaintiff "may have difficulty" doing repetitive manipulation of small objects. R. 384. Dr. Agans noted during the exam:

> Fine manipulation is noted to be done normally but exhibits a tremor while doing so, which may be related to her Albuterol treatment. Grip strength is 4/5 bilaterally.

R. 383. Taking Dr. Agans assessment as a whole, it is clear that the last portion of the assessment was somewhat speculative and not a precise statement of Plaintiff's limitations:

> She is limited in the workplace. She is unable to do any heavy labor. She is unable to do any prolonged standing or walking. She is unable to do any heavy lifting. She is unable to do any repetitive bending, pulling, pushing, stooping, crawling, or climbing. There is no restriction on her ability to sit for prolonged periods of time provided she is allowed frequent positional changes. There is no loss in her ability to speak or communicate. Her mental faculties are grossly intact at the time of the examination. She should be able to do some work related tasks involving understanding, memory, concentration, persistence, social interaction, and adaptation. *The amounts of disability related to depression or anxiety is perhaps best evaluated by a psychologist or psychiatrist. The depression and anxiety may inhibit her productivity at times. She may have difficulty doing repetitive manipulation of small objects due to her chronic neck pain.*

R. 384. The ALJ noted that Dr. Agans had assessed Plaintiff with "some difficulty with repetitive manipulation of small objects due to chronic neck pain" but she was not required to include it in the RFC. Moreover, Plaintiff has not shown that the position of office helper, the position in the national economy given by the VE at the second hearing, required any "repetitive grasping" to deliver mail, memos, or do light filing.

## IV.  CONCLUSION

For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.  Accordingly, it is **respectfully RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g), direct the Clerk of the Court to enter judgment consistent with this opinion and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 20, 2015.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy